

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-22-2002

# Russell v. Paul Revere Life Ins

Precedential or Non-Precedential:

Docket 1-2824

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Russell v. Paul Revere Life Ins" (2002). *2002 Decisions.* Paper 198.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/198

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-2824
_____

WILLIAM R. RUSSELL, III,
                    Appellant

v.

PAUL REVERE LIFE INSURANCE COMPANY
_____

Appeal from the United States District Court
For the District of Delaware
D.C. No.: 96-cv-00474
District Judge: Honorable Gregory M. Sleet
_____

Argued: March 5, 2002

Before: SCIRICA, ROSENN, Circuit Judges, and WARD, District Judge.

(Filed March 22, 2002)

John M. Stull (Argued)
1300 North Market Street
P.O. Box 1947
Wilmington, DE 19899

Edmond D. Johnson
The Bayard Firm
222 Delaware Avenue
P.O. Box 25130, 9th Floor
Wilmington, DE 19899

        Counsel for Appellant


Mark E. Schmidtke (Argued)
Hoeppner, Wagner & Evans
103 East Lincolnway
Valparaiso, IN 46383

Gerald E. Burns
Klett, Rooney, Lieber & Schorling
18th & Arch Streets
Two Logan Square, 12th Floor
Philadelphia, PA 19103

Counsel for Appellee

_____

OPINION OF THE COURT

_____

ROSENN, Circuit Judge.

William R. Russell, III, claims that he sustained total disability while employed by Corporate Property Investors, Inc. (CPI), as a real estate asset manager. At the time, he was covered by both an individual policy for management employees and a group policy as an employee benefit plan. Both policies included a disability benefit, each covering 40% of the employee's salary and each issued by the Paul Revere Life Insurance Company (the Insurer or Company). As a result of an alleged disability, Russell ceased active employment and applied for disability status under both policies.

The insurer initially approved the benefits but about a year later it discontinued them on the ground that Russell no longer met the total disability definition of both policies. Following denial of his claims and his appeals pursuant to the plans, Russell sued the insurer in the United States District Court for the District of Delaware pursuant to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001-1461 seeking review of the insurer's denial of his claim for long-term disability benefits. The defendant insurance Company moved for summary judgment and the District Court granted the motion. The plaintiff, Russell, timely appealed. We affirm.

I.

Russell alleged in his complaint that he was employed by CPI in March 1990 as a Vice President and within the next two years became a participant in the Company's Individual Limited Plan and in its Group Limited Plan. He further alleged that the defendant Company is a fiduciary of both plans with discretionary authority to determine eligibility for benefits. As Vice President - Asset Manager, his duties included, inter alia, "overseeing a portfolio of commercial real estate properties located in the states of New Jersey, California, and Washington." This, he claims, required him to travel from his

office in New York approximately 25% of his time.  In his Statement for Disability
Benefits to the Company, Russell stated that he applied approximately 25% of his 40
hour week to coordinating the activities of various persons involved in the leasing and
management of each property, and reviewing budgets, marketing plans and property
appraisals for each property, including frequent travel to each property site.  He also
indicated that he spent 10 to 15 hours per week coordinating the work of in-house and
outside personnel associated with this effort.  Finally, he represented that about 5 to 10
hours per week were allocated to financial analysis, mortgage financing, selling, or
purchasing additional interests.  His claim designated his occupation as sedentary, which
was defined as involving sitting, walking, or standing, and lifting objects between zero
and 10 pounds.  The Company did not dispute Russell's characterization of his duties.

In March 1995, at age 37, Russell filed a disability claim with defendant
requesting total disability benefits under the Group and Individual Limited plans.  Both
policies essentially provide that an eligible employee is entitled to disability payments if
"(1) because of injury or sickness, you cannot perform the important duties of your own
occupation; and (2) you are under the regular care of a doctor; and (3) you do not work at
all."  The Company approved benefits under both plans retroactive to April 23, 1995.
However, it ceased payment of the benefits under both policies on January 16, 1996,
concluding that Russell no longer met the definition of total disability under either of
them.

In the District Court and in his complaint, Russell claimed that he suffers from a
complex set of symptoms involving chronic pain in his back, chest, upper right
abdominal quadrant, muscle and joint pain, as well as digestive symptoms involving
frequent painful eructation.

The District Court applied an arbitrary and capricious standard of review with a
high level of deference to the Administrator but modified to the extent that the deference
was not absolute.  It therefore limited that review to the record before the Administrator.
Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997).  The Court also noted

that because the Company was the Plan Administrator, it had a conflict of interest.  The Court, therefore, accorded the Administrator's decision "somewhat less deference."

Russell's claims to the Administrator were supported by written statements of his treating physicians, Dr. Frank Petito and Dr. Lucinda Harris.  Both opined that Russell was "continuously unable to perform in his/her occupation." Dr. Harris, however, in a letter dated April 5, 1996, stated that she believed he was "capable of doing sedentary office work that does not require any heavy lifting or any extensive travel."  She reiterated also that he suffers "chronic pain and believes him to be unable to do the level of work which he was doing prior to this chronic pain syndrome."

The language of both policies provides that the Company reserved the right to require "additional" or "continuing" proof of loss in order to continue paying benefits. The Company conducted a periodic review of the disability evidence, progress reports and activities check.  Based on this review, it ceased payment of benefits under both policies on January 16, 1996.

The January 16, 1996, Company letters terminating benefits advised Russell that it was "unable to determine any restrictions and/or limitations that would prevent [him] from returning to [his] sedentary occupation."  The Company specifically noted that Russell's complaints of "chronic abdominal pain, combined with periodic nausea; as well as frequent muscle and joint pain . . . and an inability to work long hours," coupled with the medical information submitted by his attending physicians and the activities check, do not support a finding of total disability.  The District Court agreed.

The District Court specifically found that the vast majority of the supporting claim documentation did not support a finding of total disability.  The Court found that the medical examinations consistently were unable to find a cause of Russell's symptoms and that most of the examination results were "negative" or "normal."  Although the Court found that an objective view of all the medical evidence supported the conclusion that Russell suffered chronic pain prior to his resignation from CPI, it also believed that Russell's tests and examinations were "persuasively captured" in Dr. Rand Compton's letter of March 14, 1994, to Dr. Petito, stating in pertinent part:

Besides his pain, there are no symptoms or signs that suggest a disease
process.  All of the laboratory tests done here and elsewhere have been
completely normal, and given the chronicity of his problem, it is our
opinion that there is no significant pathology that can account for his pain
symptoms.

Dr. Compton, an independent consultant of the Mayo Clinic, had previously written a
letter dated March 11, 1994, stating that multiple CT scans, ultrasounds, and
accompanying laboratory tests failed to reveal any pathology or significant abnormalities.
Dr. Compton's associate, Dr. Bruce, made a similar assessment in April 1994 in her letter
to Dr. Petito, but stated that Russell was "quite fixed in his belief that he has a serious
disease."

The District Court scrutinized the medical evidence presented by both parties,
carefully analyzing the documentation of the treating physicians.  Recognizing that Dr.
Petito's overall assessment "would appear to support the finding of total disability," the
Court also noted that Dr. Petito's report specifically referred to "extended hours" of work
and "extensive travel" as the only important job duties that were precluded by Russell's
"diminished" capacity.  The Court also concluded that Dr. Harris's opinion suggested a
disabling condition requiring accommodation as opposed to a cessation of all job related
activities.  Specifically noting that the opinion of Russell's attending physician should be
given significant weight, the Court also considered the extensive body of medical
documentation (70-plus documents) in support of Russell's claim.  The Court observed
that the vast majority of this documentation provides no diagnosis for Russell's
symptoms and does not support a finding of total disability.  Looking objectively at the
medical evidence and the policy terms, the Court found it difficult to conclude that
Russell was totally disabled from performing his duties as Real Estate Asset Manager.

In addition, the Court considered Russell's admitted level of participation in non-
job related activities as inconsistent with a finding of total disability.  Company-
authorized surveillance of Russell's non-job activities revealed to the Court, as well as

the Plan Administrator, that his hunting activities, although intermittent, required a level of exertion greater than that required by his important sedentary activities. Further, evidence of his errand running, loading and unloading baggage of various sizes, attending computer classes of several hours duration, also raised doubts of the severity of Russell's disabling condition.

Finally, the Court did not find that at any one time Russell was precluded from performing all of his important duties as defined under the Individual and Group policies. The Court concluded that an arbitrary and capricious standard, carefully administered, was not inappropriate and that under that standard summary judgment should be granted for the defendant Company.

## II.

On appeal, Russell challenges the Court's standard of review of the policies, arguing that the "discretionary language in the plan document that provides only an inferential discretionary basis to support an application of the use of deferential, arbitrary and capricious standard of review" should result in the use of a de novo, factual, and procedural analysis of the decision of the Plan Administrator. He also argues that even under an arbitrary, capricious and deferential standard, the Plan Administrator's decision must be "reasonable," free of procedural errors, and supported by substantial evidence. Furthermore, he contends that where the insurer issues policies on which the disability determinations are made and the insurer actually makes the decision as to disability status and bears the costs thereof, there is a "structural conflict."

Finally, Russell asserts that there is ambiguity in the policy language with respect to disability benefits that mandates the use of the doctrine of contra preferentem as a rule of contractual interpretation. This doctrine, he argues, requires the ambiguous terms of the policies "be construed most strongly against the drafter of the insurance policy."

The District Court acknowledged that, under ERISA, review of the administrator's denial of benefits is generally de novo review. However, where the terms of the plan reserve to its administrator's discretion the determination of a claimant's eligibility for benefits, the administrator's decision is subject to review under the

arbitrary and capricious standard this Court enumerated in Mitchell, 113 F.3d at 437.
Where the administrator's decision is confronted with a potential conflict of interest, as it
is in this case, the Court opined that the conflict must be considered in issuing the degree
of deference to be given to his decision.

In his exhaustive and carefully crafted opinion, District Court Judge Sleet first
examined the discretionary language of the plan. He noted that the Administrator's
discretion to interpret the policy and determine the eligibility of applicants for benefits
was reasonably inferred from the policy terms. Moreover, Russell conceded in his
amended complaint that the Company was a fiduciary under both policies "with
discretionary authority to determine the eligibility of benefits."

Because of the conflict of interest of the Plan Administrator with its obligation to
pay the benefits due a claimant under the policies, Russell urged the District Court to
accord little or no deference to the Administrator's decision. The Court acknowledged
that a conflict of interest existed in this case and that a modified or heightened arbitrary
or capricious standard of review was appropriate. Applying this standard and examining
the policies as a whole, the District Court reasonably looked at the facts to determine the
appropriate amount of deference. The Court concluded that Russell had to prove that he
could not perform any of the important duties of his occupation. In scrutinizing the
policy terms, the District Court noted that among the terms of both policies were
provisions for residual disability benefits. They applied to insureds who can perform
some of their occupational duties.

Taken as a whole, the Court appropriately concluded that these provisions
disclose an expectation that the insured will continue to work in some capacity in his
occupation unless the insured cannot perform any of the important duties of his job. The
Court therefore found, inter alia, that "the policy language places upon the employee the
initial burden to demonstrate that he or she can not perform any of the important duties of
his position."

Although Russell seems to acknowledge that he can perform some of the
important duties of his occupation, he contends that if he is unable to perform one of

those duties, he is totally disabled and entitled to benefits accordingly. However, the
policies provide for full benefits upon total disability. As for benefits on partial
disability, they are not payable unless the insured is working. Russell had resigned and
was not working. Russell had not provided any basis for the payment of full benefits in
the face of evidence that he is able to perform some of the important duties of his
occupation but elected not to work at all and spend his time in non-occupational tasks.
Turning to the Residual Disability section of the policies, the Court rationalized that it
provided for an expectation that a partially disabled employee "will continue to work, in
some capacity, in his or her occupation."

In support of the Administrator's decision that Russell was, at the most, only
partially disabled, the Labor Market Report prepared by Pembroke Associates identified
job opportunities in Russell's occupation in Wilmington, Delaware, that would relieve
him of the extensive travel that he and his treating physician found unduly burdensome.
The Plan Administrator had submitted the claimant's file to three independent consulting
doctors, each of whom opined that Russell was capable of performing some of his
occupational duties and work, at least on a part time basis.

The District Court also carefully considered Russell's argument that the decision
of the Plan Administrator should be reversed because it committed procedural
irregularities with respect to the surveillance tapes. The District Court found that the
Company "substantially complied with the requirements of the applicable regulations,
and performed a 'full and fair review' commensurate with [the policies]."
We agree.

### III.

In summary, the District Court gave thorough consideration to Russell's claims
and arguments, including the conflict of interest on the part of the Plan Administrator. It
found that the conflict of interest did not unreasonably or improperly affect the
Administrator's decision and that it complied with all of the applicable requirements.
The court also limited its review to the evidence before the Plan Administrator. This was
appropriate. Its failure to allow Russell to view the surveillance video tapes prior to

filing his claim was insufficient to upset the determination of the Administrator as to
preclude the award of summary judgment.  After reviewing the briefs, arguments, and
pertinent portions of the record, we perceive no error on the part of the District Court.
The judgment of the District Court will be affirmed.  Costs taxed against the appellant.

TO THE CLERK:

Please file the foregoing opinion.

<div style="margin-left: 50%;">
/s/ Max Rosenn<br>
Circuit Judge
</div>