[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14289

_____

D.C. Docket No. 04-00984-CV-T-17-TBM

LAURIE STENNER MUZYKA,

Plaintiff-Appellant,

versus

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 13, 2006)**

Before EDMONDSON, Chief Judge, KRAVITCH, Circuit Judge, and
MIDDLEBROOKS,* District Judge.

_____

*  Honorable Donald M. Middlebrooks, United States District Judge for the
Southern District of Florida, sitting by designation.

MIDDLEBROOKS, District Judge:

Laurie Stenner Muzyka ("Muzyka"[1]) appeals from the district court's grant of summary judgment in favor of UNUM Life Insurance Company ("UNUM") and the court's denial of her summary judgment motion in her suit to overturn UNUM's denial of long-term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"). For the reasons stated below, we affirm.

## I. Background

Muzyka, a Registered Nurse ("RN"), was employed as a home health clinician with BayCare Health System ("BayCare") until December 6, 1999. Muzyka was a participant in BayCare's LTD Plan with UNUM. On May 19, 2000, UNUM received Muzyka's claim for disability benefits based on her inability to work due to fibromyalgia.[2]

UNUM's LTD Plan provides up to twenty-four months of disability benefits

---

[1] In 2002, Appellant was married and changed her last name from Stenner to Muzyka. In this opinion, we refer to her as "Muzyka" throughout.

[2] Fibromyalgia is a "[r]heumatic syndrome of pain in connective tissues and muscles without muscle weakness, characterized by general body aches, multiple tender areas, fatigue, sleep disturbances, and reduced exercise tolerance" of unknown cause. Attorney's Illustrated Medical Dictionary 58 (1997).

to any participant UNUM determines is unable to perform her regular occupation due to sickness or injury. The policy provides for benefits beyond the twenty-four month "own occupation" disability period only when UNUM determines that "due to the same sickness or injury" the participant is unable to perform the duties of "any gainful occupation for which [she is] reasonably fitted by education, training or experience."

To be eligible for benefits, a participant must be under the regular care of a doctor. Regular care is defined as visiting a doctor "as frequently as is medically required, according to generally accepted standards, to effectively manage and treat" the disabling condition, and "receiving the most appropriate treatment and care which conforms with generally accepted medical standards" by a physician with the appropriate expertise.

The Plan limits the benefits for "[d]isabilities due to sickness or injury, which are primarily based on self-reported symptoms" to a period of no more than twelve months. Self-reported symptoms are defined as manifestations of a condition that are "not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine."

In reviewing Muzyka's claim, UNUM conducted a Functional Capacity Evaluation ("FCE") and Transferable Skills Analysis ("TSA") in May 2000. The

3

FCE concluded that Muzyka was capable of performing light to sedentary work. The FCE noted that Muzyka's true maximum capacity could not be determined because Muzyka participated inconsistently and exhibited inappropriate illness behaviors during the evaluation.

On August 8, 2000, Muzyka agreed with the FCE's assessment that she was capable of performing light to sedentary work.

By letter dated August 23, 2000, UNUM denied Muzyka's claim for benefits, finding that Muzyka was capable of performing her own occupation as an RN at the sedentary to light exertion level. UNUM's vocational consultant identified a number of occupational alternatives for an RN that Muzyka could perform.

Muzyka unsuccessfully pursued internal appeals, and subsequently filed suit seeking to have UNUM's decision overturned.

On April 24, 2002, the district court reversed UNUM's decision, finding that Muzyka was entitled to "own occupation" benefits because her regular occupation of home health clinician required more exertion than "light and sedentary" duties. Following the court's order, UNUM paid Muzyka twenty-four months of "own occupation" benefits.

On June 5, 2002, the twenty-four month period of "own occupation"

benefits under the Plan expired.

By letter dated July 24, 2002, UNUM notified Muzyka that it would not pay benefits beyond June 5, 2002, because Muzyka was not disabled from performing any gainful occupation as defined under the Plan. UNUM cited its August 2000 findings that Muzyka was able to perform a number of gainful occupations. UNUM enclosed a copy of its August 23, 2000 benefits denial letter, invited Muzyka to submit additional information in support of her claim, and advised her of how to appeal its decision.

On September 10, 2002, Muzyka submitted an Attending Physician's Statement dated September 4, 2002. In the Statement, Muzyka's doctor listed her diagnoses as chronic fatigue syndrome ("CFS"),[3] palpitations, fibromyalgia, panic attacks, and depression. Muzyka's doctor concluded that Muzyka was totally and permanently disabled from performing any gainful occupation. Muzyka's doctor did not provide the basis for this conclusion, nor submit any documentation in support of his findings. On September 27, 2002, Muzyka advised UNUM that there had been "no real change" in her condition since the court hearing.

---

[3] Chronic fatigue syndrome is "persistent debilitating fatigue of recent onset, with reduction of physical activity to less than half of usual" that is "accompanied by some combination of muscle weakness, sore throat, mild fever, tender lymph nodes, headaches and depression, with the symptoms not attributable to any other known causes." Dorland's Illustrated Medical Dictionary 1627 (28th ed. 1994).

5

Beginning in October 2002, UNUM notified Muzyka that in order to evaluate her claim further, UNUM would need additional documentation of Muzyka's medical condition. Under a reservation of rights, and without admitting liability, UNUM elected to pay benefits through December 7, 2002, while it continued to investigate the claim.

A January 13, 2003 review of the record by a medical consultant for UNUM found that Muzyka discontinued treatment in March 2002, and that her September 2002 Attending Physician's Statement was not supported by any clinical data.

A January 20, 2003 physician review of the record found no evidence of an examination consistent with the accepted criteria for diagnosing fibromyalgia, nor any evidence of an assessment by which to conclude that Muzyka suffered from chronic fatigue syndrome. The reviewer found that although Muzyka had a history of depression, the last treatment note for that condition was from March 2002. The most recent treatment note stated that Muzyka exercised regularly per her cardiologist's recommendation. Records showed that Muzyka was obtaining relief from medication for certain conditions. The reviewer also found no medical documentation of any decrease in Muzyka's functional capacity.

By letter dated March 5, 2003, UNUM denied Muzyka's claim for benefits as of June 5, 2002. UNUM noted that Muzyka's medical records included a

number of diagnoses, including fibromyalgia syndrome, chronic fatigue syndrome, panic attacks, depression, tachycardia, mitral valve prolapse, palpitations, cervical myofasciitis, chronic cervical strain/sprain, and thoracic and lumber strain/sprain. UNUM concluded, however, that the record established that Muzyka was capable of at least sedentary to light physical demand occupations. In support of that conclusion, UNUM cited, among other things, the May 2000 FCE finding that Muzyka was able to perform light to sedentary work; Muzyka's recent statement that she had been doing regular exercise; the lack of medical documentation of a decrease in functional capacity; recent psychiatric notes in the record showing no depression and a decrease in panic; and the absence of any medical data to support or corroborate Muzyka's physician's September 2002 statement that she was totally disabled. UNUM advised Muzyka that its vocational consultant had determined she would be able to engage in a number of gainful occupations based on her education and skills.

Muzyka pursued internal appeals and submitted additional information to supplement the record.

On April 14, 2003, Muzyka submitted documents related to a Regulatory Settlement Agreement ("RSA") that resulted from unrelated lawsuits against UNUM and other insurance companies and a multi-state market conduct

7

examination from the insurance bureaus of Maine, Tennessee and Massachusetts.

On June 5, 2003, a UNUM medical consultant again reviewed the record and concluded that the evidence did not support Muzyka's claim. The reviewer found no record of the criteria to diagnosis either fibromyalgia or chronic fatigue syndrome, and noted that major depression is considered an exclusionary diagnosis for CFS. Even assuming the diagnoses to be correct, the reviewer found that the claimed conditions were primarily based on self-report, that Muzyka had not been receiving the regular care that would be expected for someone who has lost all functional capacity or suffers from severe pain, and that the medical care did not conform to the usual standards for someone suffering with fibromyalgia or chronic pain.

By letter dated June 18, 2003, UNUM affirmed its denial of Muzyka's claim.

On July 3, 2003, Muzyka submitted functional capacity questionnaires completed by her doctor on January 29, 2002 and December 4, 2002, in which her doctor concluded that she was incapable of even "low stress" jobs. The questionnaires reflected Muzyka's statements to her doctor regarding her limitations and were not accompanied by additional documentation.

An August 12, 2003 review concluded that the medical records did not

contain sufficient subjective or objective information to support the diagnoses of mitral valve prolapse, fibromyalgia, or CFS, or to establish any medically limiting condition. The reviewer noted the absence of reports of symptoms consistent with her diagnoses. The reviewer specifically considered the January 29, 2002 and December 4, 2002 functional capacity questionnaires submitted by Muzyka, but found no medical information to support the description of symptoms, diagnoses and activity restrictions proposed by Muzyka's doctor.

By letter dated August 13, 2003, UNUM again affirmed its denial of Muzyka's claim. In response to Muzyka's indication that she intended to submit records from her next visit to the doctor in September 2003, UNUM advised that any additional information submitted would have to be relevant to her condition as of June 5, 2002.

On October 2, 2003, Muzyka submitted doctor's reports apparently dated July and August 2003 to document her diagnosis of fibromyalgia, as well as notes from seven doctor's visits between January 2002 and August 2003. In a letter, Muzyka acknowledged that her bowel symptoms were controlled by diet and exercise.

A November 26, 2003 review again found Muzyka's records not to be consistent with a total loss of functional capacity and noted inconsistencies in

9

Muzyka's doctor's 2002 reports regarding Muzyka's limitations. The reviewer found that the July 2003 diagnosis of fibromyalgia again appeared to be unsupported, and that no new medical information supported any additional restrictions or limitations as of June 5, 2002.

By letter dated December 1, 2003, UNUM again affirmed its denial of Muzyka's claim.

Muzyka returned to district court to challenge UNUM's decision not to continue benefits. The parties ultimately filed cross motions for summary judgment.

On July 7, 2005, the district court granted summary judgment in favor of UNUM. The court found that UNUM's interpretation of the Plan was correct and that UNUM's factual determinations were reasonable. Muzyka now appeals.

## II. Standard of Review

We review the district court's ruling de novo, applying the same legal standards that governed the district court's disposition. Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1134 (11th Cir. 2004). Williams outlines the procedure for reviewing the denial of benefits under an ERISA Plan. Id. at 1337-38. We first determine de novo whether the administrator's decision was "wrong."

If the decision was wrong, then we determine whether the administrator was vested with discretion in reviewing claims. Where the administrator had such discretion but made a decision that was wrong, we must determine whether "reasonable" grounds support the decision or whether the decision was arbitrary and capricious. If no reasonable grounds exist, we must reverse the decision. If reasonable grounds exist, we proceed to determine whether the administrator operated under a conflict of interest. If there is no conflict, that is the end of the inquiry and we affirm. If there is a conflict, we apply the "heightened" arbitrary and capricious standard to determine whether the decision should be affirmed or reversed.

## III. Discussion

The first step in our analysis, is to determine de novo whether UNUM's decision was "wrong." For the reasons that follow, we find that UNUM's decision was not wrong.

The record before UNUM supported UNUM's determination that Muzyka was capable of performing light to sedentary work.[4] The May 2000 FCE

---

[4] Muzyka has not contested UNUM's finding that numerous such jobs were available to Muzyka in which she could earn comparable income in the relevant geographical area.

established Muzyka could perform light to sedentary work; Muzyka agreed with that assessment in August 2000; and, as late as September 2002, Muzyka told a UNUM representative that there had not really been any change in her medical condition. There was no evidence, other than conclusory and at times inconsistent statements by Muzyka's treating physician based on self-reporting, to document any decrease in functional capacity.

Muzyka's diagnoses were not supported by the record. For example, Muzyka had been diagnosed with depression, a symptom the UNUM medical consultant considered an exclusionary symptom for a diagnosis of chronic fatigue syndrome. The record did not contain findings to establish the medically recognized criteria for the diagnoses of fibromyalgia and chronic fatigue syndrome. The 2002 questionnaires by Muzyka's doctor contained only self-reported symptoms and limitations which were not supported or corroborated by other evidence in the record, whether objective or subjective. In addition, the record showed that Muzyka had exhibited inappropriate illness behavior.

Muzyka was not under the regular care of a doctor as required by the Plan. Her medical records between 2000 and 2002 were sparse. She admitted that she had only visited the doctor seven times in an eighteen month period. Although Muzyka at one point wrote to UNUM that she had not sought treatment for a time

12

because she could not afford to pay, there is no indication that she sought assistance from any agency or ever had to resort to emergency room treatment for her symptoms. UNUM's reviewers found that Muzyka's limited medical care did not conform to the usual standards for someone suffering with fibromyalgia or chronic pain. Muzyka's failure to seek regular care was not consistent with one who suffers from chronic pain. Further, Muzyka admitted that she could control flare-ups of her symptoms with medication, and that she could control bowel symptoms through diet and exercise, thereby supporting the conclusion that she was capable of gainful employment.

Muzyka complains that UNUM improperly relied on a "stale" FCE rather than obtaining a current evaluation, failed to schedule an examination by an Independent Medical Examiner ("IME"), and neglected to contact her treating physician for "clarification." Muzyka has not cited any provision in the Plan obligating UNUM to take any of these measures. In any event, Muzyka concurred with the FCE assessment in August 2000 and stated that her condition had not really changed in September 2002. Furthermore, as described above, UNUM's determination was not based solely on the May 2000 FCE, and was amply supported by the totality of the evidence.

Muzyka argues that the district court erred in concluding that UNUM was

only required to look at medical records that pre-dated June 5, 2002. Under the terms of policy, UNUM was obligated to continue to pay benefits past June 5, 2002 only if by reason of the same illness or injury Muzyka was unable to perform the duties of "any gainful occupation." If, as of June 5, 2002, Muzyka was not so disabled, then UNUM's obligation ended. If, as of that date, Muzyka was so disabled, then UNUM's obligation to pay continued. The relevant inquiry then was, as the district court found, whether Muzyka's condition rendered her unable to perform any gainful occupation as of June 5, 2002.

Muzyka argues that UNUM effectively conceded that Muzyka was disabled from performing "any gainful occupation" when it continued to pay benefits after June 5, 2002, and was therefore obliged to evaluate her condition after that date. This argument has no merit. As the district correctly concluded, UNUM's decision to continue to pay benefits after June 5, 2002, under a reservation of rights, did not constitute an admission of liability, or, more precisely, an admission that Muzyka was in fact unable to perform "any gainful occupation" on and subsequent to June 5, 2002.

Muzyka argues that the district court erred in refusing to consider Muzyka's appeals correspondence to UNUM, which she contends would have definitively established her diagnosis, limitations, and disability. Muzyka also suggests that

14

UNUM engaged in a selective review of the records, improperly crediting its paper reviewers over her treating physician. These claims are refuted by the record. UNUM considered all medical evidence submitted on multiple internal appeals.[5] Further, as described above, none of the information submitted by Muzyka was sufficient to establish -- definitively or otherwise -- that Muzyka was disabled under the relevant terms of the policy. Muzyka's complaint that UNUM did not solicit her input until February 2003 is also refuted by the record. As early as July 24, 2002, UNUM advised Muzyka that she could submit additional materials for further review.

Muzyka contends that UNUM's investigation process was tainted and its decision pre-determined. This contention is refuted by the record. Muzyka was afforded multiple opportunities to submit additional information in support of her claim. UNUM considered relevant evidence each time it was submitted. While investigating the claim, UNUM paid an additional six months of benefits not required under the policy, and has not sought to recover those.

Lastly, Muzyka argues that it was error for the district court to conclude that she could not establish her disability on the basis of self-reported symptoms alone.

---

[5] The district court correctly concluded that the settlement agreement arising from unrelated lawsuits against UNUM and other companies (which Muzyka contended impugned the integrity of UNUM's claim review process) was irrelevant.

The policy expressly provides that "[d]isabilities due to sickness or injury, which are primarily based on self-reported symptoms . . . have a limited pay period of up to 12 months." Self-reported symptoms are defined as manifestations of a condition that are "not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine." Muzyka had already obtained more than twenty-four months of disability benefits; she was therefore not eligible to receive additional disability benefits on the basis of self-reported symptoms alone.

Muzyka's reliance on Mitchell v. Eastman Kodak Co., 113 F.3d 437 (3d Cir. 1997) is misplaced. In Mitchell, the Third Circuit found that it was arbitrary and capricious for an insurer to deny benefits based on a lack of "objective evidence," where the undisputed evidence showed Mitchell suffered from severe chronic fatigue symptoms that precluded him from working; the plan under which Mitchell was covered did not require that he establish his disability with clinical evidence of the illness' etiology; and there was no more objective medical evidence Mitchell could have submitted even though chronic fatigue was universally recognized in the medical community as a severe disability.

Here, by contrast, the record evidence does not support a finding of severe symptoms precluding the ability to work; Muzyka's own statements and failure to

16

seek regular care roundly undermine her claim of total disability and chronic pain. The plan under which Muzyka is covered limits the pay period for self-reported symptoms to twelve months. Further, UNUM's medical reviewers identified additional medical evidence that could have been submitted to establish particular diagnoses, but was absent from the record.

Based on our review of the record, UNUM's determination that Muzyka was not disabled from performing "any gainful occupation" as defined by the Plan was correct. Under Williams, that is the end of our inquiry. We AFFIRM the district court.