Juanita RICHEY, Plaintiff,

v.

HARTFORD LIFE & ACCIDENT INSURANCE COMPANY, Defendant.

Case No. 8:08–cv–866–T–26TBM.

United States District Court, M.D. Florida, Tampa Division.

April 15, 2009.

William J. Gallwey, III, Jerel C. Dawson, Shutts & Bowen, LLP, Miami, FL, for defendant Hartford Life and Accident Insurance Co.

## ORDER

RICHARD A. LAZZARA, District Judge.

This cause comes before the Court on Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law, which is accompanied by the administrative record.[1] (Dkt. 15.) Defendant has also filed a Statement of Undisputed Facts. (Dkt. 16.) Plaintiff filed a memorandum in opposition (Dkt. 19), as well as a Statement of Disputed Facts (Dkt. 20).

The Complaint in this action seeks to overturn Defendant's decision, as a claims administrator of an employee welfare benefit plan, to discontinue payment of long term disability ("LTD") benefits to Plaintiff. The action is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Defendant moves for entry of a summary final judgment in its favor and against Plaintiff on all claims, arguing that the undisputed administrative record establishes that Defendant's determination was based on reliable medical and vocational evidence that Plaintiff was ineligible for continued benefits under the terms of the applicable insurance policy ("the Policy") because she was not medically precluded from working in "any occupation."

Plaintiff urges that the presence of several genuine issues precludes the entry of summary judgment. Specifically, Plaintiff challenges Defendant's decision as arbitrary and unreasonable in light of Defendant's conflict of interest because: (1) it was not based on the actual language of the policy at issue; (2) Defendant never actually addressed whether Plaintiff was prevented from performing one or more of the "essential duties" of the occupation it had determined she could perform as re-

quired by the Policy; (3) the decision was based on an employability analysis which did not contain the "essential duties" of the occupations which the employability analysis concluded Plaintiff could perform; (4) it was based on a biased medical expert's report which explicitly declined to contact her treating physician with respect to restrictions which contradicted his interpretation of her opinion; and (5) Plaintiff's inability to reliably report to work on a regular basis—an "essential duty" by definition—was never addressed by Defendant.

Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The Eleventh Circuit Court of Appeals has established a "well-defined series of six steps" for district courts to follow in "reviewing a denial of benefits decision in an ERISA case." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir.2008). The court's inquiry begins with a review of the "plan documents to determine whether they grant the administrator discretion in making the benefit determinations." *Id.* The court next performs an initial *de novo* review to determine whether the benefits

---

1. Citations to the administrative record are signaled throughout this Order with the letter "H" followed by the stamped page number.

decision was "wrong." *Id.* at 1246–47. The court decides whether, based on the "record before the administrator at the time the decision was made," the court would have reached the same conclusion as the administrator. *Id.* at 1246. In the initial *de novo* review, the plaintiff "bears the burden of proving that she is disabled." *Id.* at 1247. If the Plaintiff's burden is unmet, then the administrator's decision was not "wrong," and the court ends its inquiry and enters summary judgment for the administrator. *Id.*

■■■ If the court concludes that the administrator's decision was "wrong," it then reviews the decision under the deferential "arbitrary and capricious standard." *Doyle v. Liberty Life Assur. Co. of Boston,* 542 F.3d 1352, 1356 (11th Cir.2008). Under this standard, also referred to as an "abuse of discretion" standard, the court determines "whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Id.* at 1360. As long as the decision had a reasonable basis, it "must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary conclusion." *White v. Coca-Cola Co.,* 542 F.3d 848, 856 (11th Cir.2008) (citation omitted). If the "evidence is close," then the administrator did not abuse its discretion, and the requisite deference compels the affirmance of the administrator's decision. *Doyle,* 542 F.3d at 1363.

■■■ Where an administrator is responsible for both deciding and paying benefits claims, as is the case here, the administrator has a conflict of interest that the court must weigh during the arbitrary and capricious review. *Id.* at 1359–60. However, the existence of a conflict is "merely ... a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* at 1360.

The administrator has no burden of showing that self-interest did not affect its decision; instead, the "burden remains on the plaintiff" to show that the decision was arbitrary and capricious. *Id.* Even where there is a conflict of interest, courts still "owe deference" to the administrator's "discretionary decisionmaking." *Id.* at 1363. It is not the defendant's burden to prove its decision was not tainted by self-interest. *Id.* at 1360 (citing *Metropolitan Life Ins. Co. v. Glenn,* — U.S. —, 128 S.Ct. 2343, 2348–49, 171 L.Ed.2d 299 (2008)) (implicitly overruling the heightened and capricious review contained in the sixth step of the court's analysis on review of a decision denying ERISA benefits).

### Discussion

■■■ ERISA disability is not established merely by the existence of pain, even chronic pain, in the absence of proof that the claimant's pain actually precludes him or her from working. *See Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 948 (8th Cir.2000) (upholding determination that claimant was capable of working even though there was "no dispute" that she suffered from "chronic back pain," and affirming summary judgment for administrator); *Russell v. Paul Revere Life Ins. Co.,* 288 F.3d 78, 80–81 (3d Cir.2002) (affirming summary judgment for administrator where claimant "suffered chronic pain" but failed to show that it rendered him "totally disabled from performing his [occupational] duties"). In the instant case, Plaintiff was diagnosed with, and claims to be disabled by, a variety of conditions including cervical disc disease, cervical disc herniation, cervical myofasciitis, chronic cervical pain syndrome, cervical spondylosis, and depression. (*See* H 298, 302–04, 308–09, 414–15, 605–06.) However, ERISA case law establishes that these ailments are among the many medical con-

ditions that vary in degree of severity and often do not prevent a person from working. *See Pari–Fasano v. Hartford Life and Accident Ins. Co.*, 230 F.3d 415, 417 (1st Cir.2000) (cervical disc disease); *Meraou v. Williams Co. LTD Plan*, 221 Fed. Appx. 696, 703–04 (10th Cir.2007) (cervical disc disease): *Houston v. Provident Life and Accident Ins. Co.*, 390 F.3d 990, 993 (7th Cir.2004) (cervical disc herniation); *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 585–86 (8th Cir.1999) (degenerative disc disease and cervical spondylosis); *Muzyka v. Unum Life Ins. Co. of Am.*, 195 Fed.Appx. 904, 906–07 (11th Cir. 2006) (cervical myofasciitis); *Fernandez v. Warner Lambert Co.*, No. 04–1678, 2007 WL 470641 at *7 (D.P.R. Feb. 8, 2007) (cervical pain syndrome). Because Plaintiff's medical diagnoses and complaints of pain do not on their own establish her entitlement to continued LTD benefits, she must demonstrate that her conditions and symptoms preclude her from working in "any occupation." Plaintiff fails to meet her burden. No genuine issues of fact exist. Instead, the record makes clear that she is not precluded from working in "any occupation."

The Policy at issue actually places the burden on the employee to prove that he or she is incapable of working in "any occupation." (*See* H 1, 4–6, 11, 12, 18–19.) The administrative record establishes that Plaintiff was fully capable of such work. In particular, Plaintiff's treating neurologist, Dr. Love, expressly advised in a signed writing that she would be capable of full-time work in a sedentary or light level capacity if she changed positions as needed (and avoided heavy or overhead lifting). (*See id.* at 269–70, 276–77.) The

opinion of Dr. Love expressed to Dr. Pick was consistent with the physical capacities evaluation ("PCE") completed by Dr. Love in September of 2005, indicating that Plaintiff was capable of sitting for eight hours at a time, standing for eight hours at a time, walking for eight hours at a time, and lifting up to 20 pounds on an occasional basis. (*See id.* at 320–21.) Dr. Hebblewhite completed another PCE in August of 2006 and stated that Plaintiff was capable of sitting for a total of four hours (up to two hours at a time), standing for two hours (at a time or in total), and walking for two hours (at a time or in total). (*See id.* at 383–84.) He also stated that Plaintiff was able to lift up to 10 pounds frequently. (*See id.*) Despite Plaintiff's assertions to the contrary, these capabilities clearly establish Plaintiff's ability to perform sedentary or light demand level work on a full-time basis. *See Lopes v. Metropolitan Life Ins. Co.*, 332 F.3d 1, 3 n. 2 (1st Cir.2003) (citing Department of Labor guidelines and noting that sedentary work "involves sitting most of the time," with standing and walking required only occasionally, and with occasional lifting of up to ten pounds); *Archible v. Metropolitan Life Ins. Co.*, 85 F.Supp.2d 1203, 1220 (S.D.Ala. 2000) (holding that light work entails significant standing and walking, or occasional lifting of up to 20 pounds).

 It is well-settled law that "individuals capable of performing sedentary-to-light [2] work are not totally disabled" under an "any occupation" ERISA policy. *See Silvey v. FMC Corp. Long–Term Disability Plan*, 1996 WL 690156 at *3 (6th Cir. Nov. 27, 1996). *See also, Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452

---

**2.** The U.S. Department of Labor recognizes five categories of work with respect to the degree of physical exertion required. They are, in order from least demanding to most demanding: sedentary, light, medium, heavy, and very heavy. *See Richards v. Hartford Life*

*and Accident Ins. Co.*, 356 F.Supp.2d 1278, 1280 (S.D.Fla.2004), *aff'd,* 153 Fed.Appx. 694 (11th Cir.2005). These categories are often used by administrators, physicians, and courts in the ERISA disability context. *Id.*

(11th Cir.1997) (affirming summary judgment for administrator under "any occupation" standard where physician deemed claimant "capable of sedentary work"); *Schultz v. Progressive Health,* 380 F.Supp.2d 780, 783 (S.D.Miss.2005) (upholding termination of benefits under "any occupation" standard based on claimant's "ability to perform light work"). Defendant was not wrong in relying on Dr. Love's assessment of Plaintiff's work capacity in terminating benefits. The Eleventh Circuit has upheld administrative reliance on treating physicians' assessments of their patients' work capabilities. *Paramore,* 129 F.3d at 1452. In addition, courts applying ERISA have "repeatedly upheld administrative claim denials where medical evidence indicates that shifting positions as needed would enable the claimant to perform sedentary work." *Richards v. Hartford Life and Accident Ins. Co.,* 356 F.Supp.2d 1278, 1287–88 (S.D.Fla. 2004), *aff'd,* 153 Fed.Appx. 694 (11th Cir. 2005).

■ A claims administrator reviewing benefits eligibility under an "any occupation" standard is not required to "collect vocation evidence" in order to "prove there are available occupations for the claimant." *Archible v. Metropolitan Life Ins. Co.,* 85 F.Supp.2d 1203, 1220 n. 13 (S.D.Ala.2000). The instant Policy, as all disability policies do, places upon the claimant the responsibility of providing the administrator with proof of continued disability. (*See* H 1, 11, 12, 18–19.) However, the use of vocational evidence in conjunction with medical evidence is an effective method of reaching an informed decision as to a claimant's work capability and, thus, Defendant performed an employability analysis to determine if there were suitable occupations that Plaintiff would be capable of performing. (*See id.* at 353–60.) The employability analysis used the Occupational Access System ("OASYS"), a computerized job matching system that cross-references an individual's capabilities and qualifications with 12,741 recognized occupations as classified by the United States Department of Labor's Dictionary of Occupational Titles (the "DOT"). (*Id.*) The employability analysis identified six DOT-recognized, sedentary, or light demand level occupations that were within Plaintiff physical capabilities and for which she was qualified. (*Id.*) Therefore, Defendant was not wrong to rely on the results of its employability analysis as additional evidence that Plaintiff was not incapable of working in "any occupation" as provided in the Policy. *See Altemus v. Hartford Life Ins. Co.,* 2008 WL 906728 at *5 (M.D.Fla. April 3, 2008) (entering summary judgment for Hartford Life under "any occupation" standard based in part on "employee analysis report" and ruling that Hartford Life was "well within its boundaries to rely on the report as has been done in other cases").

■ Finally, Plaintiff's medical records were thoroughly reviewed by an independent, board certified orthopedic surgeon, Dr. Pick, who opined that she was physically capable of working, and by an independent neuropsychologist, Dr. Jay, who pointed out the complete absence of evidence of any psychiatric impairment. (*See* H 269–70, 272–85, 296–07.) An ERISA administrator is entitled to rely on the opinion of a qualified consultant who neither treats nor examines the claimant, but instead reviews the claimant's medical records. *See Hufford v. Harris Corp.,* 322 F.Supp.2d, 1345, 1359 (M.D.Fla.2004); *Hightshue v. AIG Life Ins. Co.,* 135 F.3d 1144, 1148 (7th Cir.1998). As such, the Court finds that Defendant was not wrong in relying on the professional assessments of Drs. Pick and Jay. *See Giertz–Richardson v. Hartford Life and Accident Ins. Co.,* 536 F.Supp.2d 1280, 1291 (M.D.Fla.2008) (ruling that the claims administrator was "not wrong" to credit opinions of physi-

cians who "reviewed Plaintiff's medical records," and entering summary judgment for administrator.)

**ACCORDINGLY,** it is **ORDERED AND ADJUDGED:**

Defendant's Motion for Summary Judgment (Dkt. 15) is granted. The Clerk shall enter judgment in favor of Defendant, terminate any pending motions, and close this case.