Patricia HERRING, Plaintiff,

v.

AETNA LIFE INSURANCE
COMPANY, Defendant.

Case No. 11–CV–81091.

United States District Court,
S.D. Florida,
West Palm Beach Division.

Oct. 11, 2012.

Paul Martin Sullivan, Jr., Paul M. Sullivan, Jr., P.A., West Palm Beach, FL, for Plaintiff.

Jerel Charles Dawson, William Joseph Gallwey, III, Shutts & Bowen, Miami, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on Defendant Aetna Life Insurance Company's motion for summary judgment **[DE 30]** filed on June 15, 2012. Plaintiff Patricia Herring filed a response **[DE 35]** on July 31, 2012. Defendant replied **[DE 36]** on August 7, 2012. The motions are fully briefed, and a hearing was held on September 12, 2012. This matter is ripe for adjudication.

### I. Introduction

Plaintiff Patricia Herring ("Herring") suffers from many medical problems. Her struggles associated with these problems are ongoing and her pain is chronic. While the Court sympathizes with Her-

ring's condition, the law surrounding claims of the unlawful denial of disability benefits is clear: *medical conditions, if not work preclusive, are not enough to establish a disability under the Employee Retirement Income Security Act ("ERISA").* Therefore, the Court grants summary judgment in favor of Defendant's denial of Herring's disability benefits under her insurance plan.

## II.   Background [1]

On March 30, 2009, Herring ceased work as an accounts payable clerk and filed a claim for long term disability ("LTD") benefits. The following day she underwent coronary artery bypass surgery and was diagnosed as unable to work. Through her employer, she was eligible to receive LTD benefits as a participant in an employee welfare benefit plan under a group insurance policy issued by Defendant Aetna Life Insurance Company ("Aetna"). Aetna served as the plan's claim administrator, meaning it had discretionary authority to determine whether Herring was entitled to benefits under the terms of the policy.

Under the policy, LTD benefits were payable for a period of "total disability." The policy defines total disability as: (1) one who is not able to perform the material duties of his occupation; or, (2) one who is not able to work at any reasonable occupation. Statement of Undisputed Material Facts **[DE 30]** ("SUMF") ¶ 3. Reasonable occupation is defined as "any gainful activity for which [one is], or may reasonably become, fitted by education, training, or experience." SUMF ¶ 4. A

reasonable occupation includes "sedentary work," where standing and walking are required only occasionally. A period of total disability ends when one is not totally disabled or fails to give proof of his continued total disability.

Aetna approved Herring's claim for LTD benefits, but it notified her that as of June 27, 2010, her eligibility for continued benefits would be contingent on evidence that she was totally disabled. Over a year later, on July 8, 2010, Aetna hired Dr. Josef Hudec, M.D., M.P.H., to conduct an Independent Medical Examination ("IME") to determine if Herring was totally disabled and remained eligible for LTD benefits. Dr. Hudec reported that Herring was able to perform sedentary work. He further indicated that, subject to physical limitations, Herring was capable of working for eight hours a day. *See* SUMF ¶¶ 13–14. Following his report, Aetna employed a Vocational Rehabilitation Consultant ("VRC") who identified five sedentary occupations which Herring could perform and located employers in Herring's area for each occupation. On August 14, 2010, in light of the IME and the VRC's findings, Aetna terminated Herring's LTD benefits on the grounds that Herring could perform a "reasonable occupation" under the policy. SUMF ¶ 17.

Herring appealed Aetna's decision on February 14, 2011, 843 F.Supp.2d 1305 (S.D.Fla.2012), stating that her "continuing cardiac condition, her diabetes and indeed her other conditions, involving her neck, shoulder, thoracic and lumbar pain continue to incapacitate her from being able to

---

**1.**   Aetna requests that the Court deemed admitted its Statement of Undisputed Material Facts **[DE 30]** because Herring's opposing statement fails to comply with the Local Rules for this District. According to Local Rule 7.5(c), "material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph number scheme used by the movant." S.D. Fla. L.R. 7.5(c). As Herring's opposing statement of material facts do not correspond with the order and numbering scheme used by Aetna, the facts set forth in Aetna's statement are deemed admitted to the extent they are supported by record evidence. *See id.* 7.5(d).

engage in employment." SUMF ¶ 20. Included in her appeal was a letter from her treating cardiologist, Tobia Palma, M.D., stating that Herring was totally disabled and had "no ability to work." SUMF ¶ 20(a). As the claim administrator of Herring's plan, Aetna reviewed Herring's appeal of its decision to terminate her benefits.

To assist in its evaluation, Aetna hired three physicians to review Herring's medical records. Two of the three physicians concluded that Herring was capable of sedentary work and not totally disabled. The third reviewing physician offered a more restrictive projection of Herring's physical capabilities. His review was consistent with comments made by Dr. Levy, a psychiatrist referred by Herring's family practitioner and assigned by Aetna to offer his medical opinion on the results of her IME. *See* SUMF ¶ 19. In consideration of these reports, Aetna affirmed its decision to terminate Herring's benefits on August 14, 2010. Herring now seeks to overturn this decision, claiming that she is totally disabled and Aetna failed to conduct a full and impartial review of her claim.

### III. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587, 106 S.Ct. 1348 (citing FED.R.CIV.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

### IV. Discussion

The Eleventh Circuit lays out a six-step analysis for reviewing a benefits decision under ERISA:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.,* 644 F.3d 1350, 1355 (11th Cir.2011), *cert. denied,* — U.S. ——, 132 S.Ct. 849, 181 L.Ed.2d 549 (U.S.2011).

Under this framework, Herring initially bears the burden to prove that she is disabled and Aetna's decision is wrong. *See Glazer v. Reliance Standard Life Ins.,* 524 F.3d 1241, 1247 (11th Cir.2008). If Herring meets her burden, then she must demonstrate that Aetna's decision to deny her LTD benefits was arbitrary and capricious, meaning it had no reasonable grounds to support its decision. *Id.* at 1246. In considering whether Aetna's decision was arbitrary and capricious, the Court must take into account Aetna's con-

flict of interest in paying Herring's claim, but its analysis remains centered on whether a reasonable basis existed for Aetna's decision. *See Blankenship,* 644 F.3d at 1355.

■■■ Herring fails to introduce evidence that she was totally disabled when her benefits were terminated, and therefore, the Court does not find that Aetna's decision was wrong. Two reviewing physicians considered the medical evidence and found that Herring was capable of sedentary work. Their findings were consistent with the IME performed by Dr. Hudec, who also determined that Herring was capable of sedentary work and could work up to eight hours a day. This evidence was considered in conjunction with the VRC's report, which identified sedentary occupations available to Herring in her geographical area. *See Richey v. Hartford Life & Acc. Ins. Co.,* 608 F.Supp.2d 1306, 1312 (M.D.Fla.2009) ("[T]he use of vocational evidence in conjunction with medical evidence is an effective method of reaching an informed decision as to a claimant's work capability....").

The fact that Dr. Palma, Herring's treating physician, found that Herring was totally disabled and could not work does not make Aetna's final decision to terminate benefits wrong. Aetna "need not accord extra respect to the opinions of a claimant's treating physicians," *Blankenship,* 644 F.3d at 1354, and this Court cannot say that Aetna was wrong to credit the opinions of the reviewing physicians over that of Dr. Palma's. *See Giertz–Richardson v. Hartford Life & Acc. Ins. Co.,* 536 F.Supp.2d 1280, 1291 (M.D.Fla. 2008) ("While Plaintiff's doctors believe that Plaintiff was unable to work, it was not wrong for Defendant to credit the opinions of the [ ] doctors that reviewed Plaintiff's medical records over the opinions of Plaintiff's doctors.").

Moreover, it cannot be said that Aetna's decision was arbitrary and capricious, that is, no reasonable grounds supported Aetna's decision to terminate Herring's benefits. While one of the reviewing physicians agreed with Dr. Levy that Herring was not capable of sedentary work, it was not unreasonable to rely on the findings of the other two reviewing physicians alongside Dr. Hudec's IME to conclude that Herring failed to show she was totally disabled under the plan. *See Blankenship,* 644 F.3d at 1356 (holding that a claim administrator's decision to terminate benefits was not unreasonable where it "relied upon the advice of several independent medical professionals" to find that the claimant failed to provide conclusive medical evidence of disability).

Herring lists her medical conditions in detail to provide support for the claim that she is totally disabled, but a "medical diagnosis [by itself] does not establish a disability." *Jordan v. Northrop Grumman Corp.,* 370 F.3d 869, 880 (9th Cir.2004), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 969 (9th Cir.2006). Herring must demonstrate how her medical conditions preclude her from working "any reasonable occupation," and here, she does not make this showing. Furthermore, Herring's argument that Aetna failed to fully investigate Herring's disability before terminating her LTD benefits is unfounded. Aetna obtained the opinions of three reviewing physicians along with commentary from Dr. Levy concerning Herring's IME. *See Keith v. Prudential Ins. Co. of Am.,* 347 Fed. Appx. 548, 552 (11th Cir.2009) (noting that a claim administrator "thoroughly investigated [a] claim" where it considered the evidence and "obtained the opinions of three different medical professionals"). Herring produces no evidence to contradict that Aetna conducted a thorough and impartial claim review process.

## V. Conclusion

The Court has carefully considered the motion, response, reply, applicable law, and pertinent portions of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant Aetna Life Insurance Company's motion for summary judgment is **GRANTED.** Final judgment will be entered by separate order.