[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10348

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 07 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00133 CV-3-RV-EMT

ROBIN DOYLE,

Plaintiff-Appellant,

versus

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 7, 2008)**

Before BIRCH, BARKETT and COX, Circuit Judges.

COX, Circuit Judge:

## I. INTRODUCTION

The principal issue in this case is whether the district court applied the correct

standard of review in determining that an ERISA adminstrator's decision denying

benefits to a plan beneficiary was not tainted by its conflict of interest. We reverse the district court's grant of summary judgment in favor of the administrator because the court used the wrong standard of review and because we cannot say that application of the proper standard would yield the same result.

## II. FACTS AND PROCEDURAL HISTORY

The Plaintiff, Robin Doyle, began working for ChoicePoint Services on February 24, 2003, as a Registered Nurse/Clinical Information Line Specialist. ChoicePoint sponsored for its eligible employees a long-term disability ("LTD") benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. The Defendant, Liberty Life Assurance Company of Boston, insured the plan pursuant to a group policy, and administered the plan.

On January 30, 2004, Doyle filed a claim with ChoicePoint for disability benefits under the plan, claiming that an anal fissure, enlarged internal hemorrhoids, and external anal skin tags prevented her from working. On February 10, 2004, she underwent a fissurotomy and sphincterotomy in an attempt to alleviate these problems. Liberty Life granted Doyle short-term disability ("STD") benefits through the maximum date available, May 9, 2004.

While Doyle was receiving STD benefits, Liberty Life obtained her medical records to determine whether she would qualify for LTD benefits, for which she had

applied, after her STD benefits expired. After receiving medical records from six of Doyle's treating physicians, an independent physician retained by Liberty Life reviewed her records. Liberty Life notified Doyle that she would not receive LTD benefits because she did not meet the "own occupation" standard of "disability" under ChoicePoint's LTD policy, which provided:

> For persons other than pilots, co-pilots, and crewmembers of an aircraft:
> a. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
> b. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

(R.2-12 at 6.)

After Liberty Life denied her claim for LTD benefits, Doyle visited a rheumatologist who diagnosed her with fibromyalgia. In light of this new diagnosis, Doyle appealed denial of her claim. Liberty Life reviewed her additional medical records and received further peer review from a specialist in internal medicine. Liberty Life then upheld its decision denying Doyle benefits, stating that she still did not meet the "own occupation" standard of "disability" under ChoicePoint's LTD policy.

Invoking ERISA jurisdiction, 29 U.S.C. § 1132(a)(1)(B), (e)(1), Doyle filed this action against Liberty Life seeking review of its decision. Liberty Life filed a motion for summary judgment, which the district court granted. Doyle appeals.

## III. ERISA FRAMEWORK AND THE DISTRICT COURT PROCEEDING

ERISA does not promulgate standards under which district courts must review an administrator's decision denying benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948, 953 (1989). To fill this void, the Supreme Court held in *Bruch* that district courts should review de novo benefit decisions made by an administrator who is without discretion to determine eligibility or construe the terms of an ERISA-governed plan. *Id.* at 115, 109 S. Ct. at 956. On the other hand, the Court said that where the administrator exercises discretion, deferential (i.e., arbitrary and capricious[1]) review is appropriate according to trust principles, which guide review of decisions affecting ERISA-governed plans. *Id.* at 111, 109 S. Ct. at 954. Finally, the Court observed that when an administrator with discretion operates under a conflict of interest, that "conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.* at 115, 109 S. Ct. at 957 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)).

---

[1] Cases in our circuit equate the arbitrary and capricious standard with the abuse of discretion standard. *See Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989).

Following *Bruch*, we undertook the "task [of] develop[ing] a coherent method for integrating factors such as self-interest into the legal standard for reviewing benefits determinations." *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1561 (11th Cir. 1990). In *Brown*, a plan interpretation case, we reasoned that trust principles mandated that some deferential level of review applies to benefits decisions, *id.* at 1568, but refused to apply "highly deferential" review when the administrator operated under a conflict of interest, *id.* at 1562. Thus, we settled on what came to be known as the "heightened arbitrary and capricious standard" (hereinafter the "heightened standard"), the hallmark of which is its burden-shifting requirement. Under this standard, "the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest." *Id.* at 1566. We said that an administrator's plan interpretation that "advances the conflicting interest of the fiduciary at the expense of the affected beneficiary" was arbitrary and capricious, unless the administrator "justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Id.* at 1567.

Our more recent cases condense the holdings of *Bruch* and *Brown* into a 6-step analysis to guide district courts in reviewing an administrator's decision to deny benefits:

5

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004)

(summarizing analysis set forth in *HCA Health Servs. of Ga., Inc. v. Employers*

*Health Ins. Co.*, 240 F.3d 982, 993-95 (11th Cir. 2001)) (footnotes omitted).

The district court began its discussion in this case by noting that ChoicePoint's

plan vested Liberty Life with discretion in making claims decisions (step 2). The

court next found that genuine issues of material fact precluded a determination of

whether Liberty Life's decision was right or wrong; so, for purposes of summary

judgment, the court assumed that Liberty Life's decision was wrong (step 1). Next,

the court recited the measures taken by Liberty Life in reviewing Doyle's claim for

6

benefits and concluded that Liberty Life's denial of her claim was reasonable (step 3).

Finally, the court found that Liberty Life operated under a conflict of interest since it was responsible for both determining eligibility and paying benefits under the plan (step 4). But, instead of applying the heightened arbitrary and capricious standard (step 6), it applied a "modified" heightened arbitrary and capricious standard. The court apparently "modified" the heightened standard in the following way: instead of requiring Liberty Life to prove that its decision was not influenced by the conflict—as the heightened standard requires—the court reviewed the record and concluded that "there does not appear to be any evidence that Liberty in any way manipulated or improperly influenced Doyle's LTD benefits process in order to achieve a financially beneficial result." The court said that "given the lack of any indication to the contrary, . . . Liberty would have reached the same conclusion in this case even if it had not been operating under a conflict of interest."

The court offered two justifications for not applying the heightened standard. First, the court thought that the question of whether the heightened standard applied to an administrator's *factual determinations* "remains open in this circuit," although it acknowledged that the heightened standard applies in *plan interpretation* cases.

7

Second, the court reasoned that a modified standard was more in line with *Bruch* and principles of trust law than was our heightened standard.

## IV. ISSUES ON APPEAL AND STANDARD OF REVIEW

Doyle raises two arguments on appeal. First, she argues that the district court erred in finding that Liberty Life's decision was reasonable. Second, she argues that the district court erred in applying a modified, rather than heightened, standard of review. This error, she contends, is manifested in the court's conclusion that Liberty Life's decision was not influenced by a conflict of interest, a conclusion that she argues is not supported by the record.

Liberty Life responds that the court did not err in finding that its decision was reasonable, even if, as the court assumed, it was wrong. Next, Liberty Life argues that the district court did not err in applying a modified standard because our cases have not conclusively determined whether the heightened standard applies in factual determination cases. But, even if it does apply, Liberty Life argues, the heightened standard ascribes more importance to the presence of a conflict than the Supreme Court required in *Bruch*. Finally, Liberty Life argues that the record contains no evidence that its decision was influenced by a conflict of interest.

We review the district court's grant of summary judgment de novo and apply the same legal standards that governed the district court's decision. *Williams*, 373 F.3d at 1134.

## V. DISCUSSION

### A. Reasonableness Finding

Doyle argues that the district court erred in finding that Liberty Life's denial of her claim for disability benefits was reasonable. Specifically, she argues that it was unreasonable for Liberty Life not to consider her subjective claims of pain and suffering, which she argues are substantiated by her fibromylagia diagnosis. After reviewing the record, we agree with the district court that Liberty Life's decision was reasonable. We express no opinion on whether it was right or wrong.

Liberty Life considered Doyle's medical records and employed the services of two independent physicians to review those records. It concluded that she did not meet the plan's definition of "disability." We conclude that it was not unreasonable for Liberty Life to disregard Doyle's complaints of intangible pain and suffering. Under ChoicePoint's policy, a plan beneficiary must provide proof that she is disabled in order to obtain LTD benefits. The policy defines "proof" as including "chart notes, lab findings, test results, x-rays and/or other forms of *objective medical evidence* in support of a claim for benefits." (R.2-12 at 9) (emphasis added).

9

Therefore, it was reasonable for Liberty Life to rely only on objective medical evidence supporting Doyle's claim, evidence which Liberty Life's reviewing physicians found lacking. *See, e.g.*, R.1-12 at 278 (statement of Liberty Life's reviewing physician, Dr. Silver, that Doyle's complaints "are not substantiated by objective clinical findings"); R.2-12 at 104 (statement of Liberty Life's reviewing physician, Dr. Truchelut, that Doyle's "subjective reports are disproportionate to the physical, radiological, laboratory, and neurodiagnostic" records). We find no error in the district court's determination that Liberty Life's decision was reasonable.

### B. ERISA's Heightened  Standard of Review

Doyle's second and primary argument is that the district court erred in applying a modified, rather than heightened, standard of review. We agree. Our cases hold that the heightened standard applies to an administrator's benefits-denial decision based on factual determinations, as well as decisions based on plan interpretations. In *Torres v. Pittston Co.*, 346 F.3d 1324 (11th Cir. 2003), a factual determination case, we stated unequivocally:

> [W]e are bound by precedent to apply the heightened arbitrary-and-capricious standard both to factual determinations and interpretations of the plan document by an ERISA fiduciary operating with discretionary authority but operating under a conflict of interest.
> . . . .
>  . . . **[W]e conclude that the heightened arbitrary and capricious standard of review for decisions by a conflicted ERISA**

10

**fiduciary applies equally to determinations of fact as to determinations of plan interpretation.**

*Id.* at 1329-32 (emphasis added). We declined to differentiate between denials based on plan interpretations and denials based on factual determinations, saying that "the need to protect against the fiduciary's self-interest applies with equal force to plan determinations and findings of fact made by a conflicted fiduciary in the course of its benefits decision." *Id.* at 1332; *see also Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 234 F.3d 541, 544 (11th Cir. 2000) (applying heightened standard to conflicted administrator's factual determinations regarding "comparable employment" under severance pay plan).

Nevertheless, the district court considered the burden-shifting question open in light of the following statement in *Williams*: "In both *Shaw* and *Levinson*, two factual-determination cases, we did not say whether *Brown*'s 'heightened arbitrary and capricious,' *burden-shifting approach* should be applied to factual determination cases like this." 373 F.3d at 1138-39 (emphasis added).[2] Despite this statement, the *Williams* court said that the district court "should have applied the heightened, rather than the 'regular' arbitrary and capricious standard," *id.* at 1137, even after acknowledging that the case involved "a plan administrator's factual determinations,"

---

[2]  *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276 (11th Cir. 2003); *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321 (11th Cir. 2001).

11

*id.* at 1134 n.3. The *Williams* court recognized that, as in *Shaw* and *Levinson*, it did not have to decide whether the burden-shifting approach under the heightened standard applied because it concluded that the administrator's decision was de novo right. *Id.* at 1139 ("Because no grounds exist to disturb [the administrator's] determination under the de novo review standard, we need not review it under the more deferential ('mere' or 'heightened' arbitrary and capricious) standard . . . ."). Thus, the *Williams* court's comment about the burden-shifting approach being an open question was dictum. Finally, in recapitulating the 6-step analysis for reviewing an administrator's benefits decision originally developed in *HCA*, the *Williams* court explicitly said that the analysis applied to "*all* ERISA-plan benefit denials," including denials based on factual determinations. *Id.* at 1137 & n.6.

We conclude that the district court erred in not reviewing Liberty Life's factual determinations under the heightened arbitrary and capricious standard developed in *Brown* and applied in *Torres*. The practical effect of this error was to relieve Liberty Life of its burden of proving that its decision to deny Doyle LTD benefits was not tainted by a conflict of interest. Instead, the district court, upon consideration of the evidence, concluded that Liberty Life was due summary judgment because its decision was not affected by the conflict.

Of course, the district court's error in applying the incorrect standard warrants reversal only if the record does not support summary judgment in favor of Liberty Life, in which case the error would be harmless. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (noting that "we may affirm [the] judgment 'on any ground that finds support in the record'" (quoting *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S. Ct. 307, 308 (1957))). We conclude, however, that summary judgment was improper.

In order to succeed on its summary judgment motion, Liberty Life, as the moving party, bore the burden of establishing that there existed no genuine issue of material fact and that it was entitled to judgment as a matter of law. *Livernois v. Med. Disposables, Inc.*, 837 F.2d 1018, 1022 (11th Cir. 1988). On the issue of whether its decision was tainted by a conflict of interest—the pivotal issue upon which the district court based its grant of summary judgment—Liberty Life advanced only two arguments in its summary judgment brief. First, Liberty Life argued that its approval of STD benefits "demonstrates that Liberty Life's decision making processes were not biased." (R.1-11 at 16 n.1.) Second, Liberty Life argued that its decision to employ an independent physician to review Doyle's benefits-denial appeal "demonstrate[s] that its decision-making process was free from bias." (R.1-11 at 19 n.2.)

13

In her opposition to Liberty Life's motion for summary judgment, however, Doyle offered alternative explanations for Liberty Life's actions. Doyle argued that Liberty Life's approval of 90 days of STD benefits—which it characterized as "charitable"—could be viewed as an arbitrary decision to terminate benefits on the 91st day "without any explanation as to how Ms. Doyle's condition had changed on the 90th day." (R.2-14 at 9.) Further, Doyle explained that Liberty Life's retention of an independent physician to review her benefits-denial appeal did not demonstrate its lack of bias because Liberty Life was required by federal regulations to "obtain a report from an unrelated physician consultant as part of [her] appeal under 29 C.F.R. § 2560.503-1(h)(3)(iii) & (v) and 29 C.F.R. § 2560.503-1(h)(4)." (R.2-14 at 9.)

It was on this evidence that the district court concluded that "there does not appear to be any evidence that Liberty in any way manipulated or improperly influenced Doyle's LTD benefits process in order to achieve a financially beneficial result." (R.2-18 at 13.) We conclude that the court erred in so finding. Under our burden-shifting standard, Liberty Life bore the burden of proving that undisputed facts supported a decision that it was not influenced by a conflict, a burden that it failed to carry on the facts it advanced. Therefore, we reverse the grant of Liberty Life's motion for summary judgment.

14

While we reach the result we understand our precedent to require, we think it appropriate to note that we agree with the district court's observations in this case that our heightened standard is "flawed," and that "applying a burden shifting analysis to a claims administrator's factual determinations poses unique difficulties." (R.2-18 at 12.) We think our heightened standard is flawed in at least three ways.

First, our heightened standard is inconsistent with the Supreme Court's announcement in *Bruch* of two standards under which an administrator's decision should be reviewed, de novo and abuse of discretion. The agreement among the circuits that the decision of a conflicted ERISA administrator exercising discretion should be reviewed under a less deferential standard than the decision of an administrator not operating under a conflict is premised on the Court's dictum in *Bruch* that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" 489 U.S. at 115, 109 S. Ct. at 957 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). As this statement clearly says, the existence of a conflict should be treated only as "a factor" in determining whether the administrator abused its discretion; the existence of a conflict does not require an altogether new standard. Our use of a third standard—the heightened standard—is not required by, and more importantly is contrary to, the

Supreme Court's treatment of a conflict of interest in *Bruch*. *See Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 826 (10th Cir. 1996) (rejecting *Brown*'s heightened standard "as inconsistent with . . . the Supreme Court's dictum in [*Bruch*].").

The second flaw in our heightened standard is its burden-shifting feature, under which the *administrator* bears the burden of proving that its decision was not influenced by a conflict. As the Second Circuit noted, our burden-shifting standard is "contrary to the traditional burden of proof in a civil case." *Whitney v. Empire Blue Cross & Blue Shield*, 106 F.3d 475, 477 (2d Cir. 1997) (quoting *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996)) (internal quotation marks omitted). The traditional burden of proof requires the plaintiff to prove that the decision was tainted by self-interest, whereas our standard requires the defendant to prove that its decision was not tainted.

We stand alone in our application of a standard that shifts to the administrator the burden of proving that its decision was not influenced by a conflict. Other circuits apply one of two different approaches, neither of which shifts the burden of proof to the administrator. The First and Second Circuits, for example, have adopted a "reduced deference" approach, under which a court will reduce the deference afforded under arbitrary and capricious review after the *claimant* shows that the

16

administrator's decision was tainted by a conflict of interest.[3] Conversely, the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits apply a "sliding scale" approach, under which the district court "decrease[s] the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict," *Chambers*, 100 F.3d at 825, and then only after the claimant shows the existence of a conflict, *Rud v. Liberty Life Assurance Co. of Boston*, 438 F.3d 772, 777 (7th Cir. 2006).[4]

---

[3] *Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan*, 402 F.3d 67, 74 & n.4 (1st Cir. 2005) (burden on claimant to show conflict exists and once that showing is made "the court 'may cede a diminished degree of deference–or no deference at all–to the administrator's determinations'" (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 16 (1st Cir. 2002))); *Whitney*, 106 F.3d at 477 (Second Circuit holding that claimant must prove that the "conflict of interest affected the administrator's decision" and upon such proof, "the deference otherwise accorded the administrator's decision drops away and the court interprets the plan de novo" (quoting *Sullivan*, 82 F.3d at 1256, 1259) (internal quotation marks omitted)).

[4] *See also Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 392 (3d Cir. 2000) ("We adopt the approach of the sliding scale cases."); *Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 307 (4th Cir. 2004) ("Under this sliding-scale standard of review, '[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it.'" (quoting *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997))); *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (en banc) ("Having polled the other Circuits, we reaffirm today that our approach to this kind of case is the sliding scale standard articulated in *Wildbur*. . . . The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."); *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 260 (6th Cir. 2006) ("[T]he possible conflict should be taken into account when deciding whether the plan administrator's decision is arbitrary and capricious. However, the standard of review of not altered to a less deferential standard when the benefits administrator is operating under a conflict of interest. 'Instead, . . . the standard remains unchanged and a conflict of interest is to be considered in *applying* that standing.'" (citing and quoting *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292-93 (6th Cir. 2005)) (internal citations omitted)); *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161-62 (8th Cir. 1998) ("Based on our review of [*Bruch*], we adopt the 'sliding scale' approach. . . . [A]pplying the 'sliding scale' approach, the evidence supporting the plan

Finally, the third flaw in our heightened standard is the remarkably difficult burden it imposes upon the administrator in proving that its decision was not tainted by a conflict. Perhaps recognizing that proving the positive is easier than proving the negative, this court said in *Brown*, a plan interpretation case, that an administrator can carry this burden by showing that its decision benefitted the "class of all participants and beneficiaries." 898 F.2d at 1567. But, in a factual determination case, it is virtually impossible for an administrator to prove that its factual findings somehow benefit the "class of all participants and beneficiaries." Each claim is unique and requires individual assessment of the facts supporting the claim, so that a benefits decision with respect to one beneficiary carries no precedential value with respect to other beneficiaries. So, unable to prove that its decision benefits other beneficiaries, the administrator is relegated to the unenviable task of proving the negative, a task

---

administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity."); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006) (en banc) ("A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might. But in any given case, all the facts and circumstances must be considered and nothing 'slides,' so we find the metaphor unnecessary and potentially confusing."); *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1004 (10th Cir. 2004) ("In *Chambers*, we identified two basic approaches that had emerged in interpreting [*Bruch*]: the 'sliding scale' approach and the 'presumptively void' approach. We explicitly adopted the former. 'Under [the sliding scale] approach, the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict.'" (quoting *Chambers*, 100 F.3d at 825) (internal citations omitted)).

18

which is complicated by the fact that the decision-maker must prove that it was not even unconsciously influenced by the conflict. *See, e.g.*, *id.* at 1565 ("A conflicted fiduciary may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries."). This is an unworkable standard.

The district court recognized this flaw when it said that under our standard "a fiduciary operating under a conflict of interest is actually subject to greater scrutiny than under de novo review . . . ." (R.2-18 at 11.) Our standard is tantamount to invoking a presumption that the administrator has acted wrongly in its self-interest. This is why courts and commentators have labeled our heightened standard the "presumptively void" standard. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (en banc) (citing *Brown* as an example of the "presumptively void" approach); *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161 (8th Cir. 1988) (discussing *Brown*'s "presumptively void" standard); *Chambers*, 100 F.3d at 826 (Tenth Circuit rejecting *Brown*'s "presumptively void" standard); Kathryn J. Kennedy, *Judicial Standard of Review in ERISA Benefit Claim Cases*, 50 Am. U. L. Rev. 1083, 1158-60 (2001) (discussing *Brown*'s adoption of the "presumptively void" standard).

The benefits decision of an administrator operating under a conflict of interest should be subjected to more exacting review in both factual determination and plan

interpretation cases. As we have previously noted, in both cases "the same self-interest operates such that a 'conflicted fiduciary may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries.'" *Torres*, 346 F.3d at 1330 (quoting *Brown*, 898 F.2d at 1565). But, our heightened standard effectively makes the administrator's conflict of interest the dispositive factor, rather than merely "a factor," in determining whether its decision was arbitrary and capricious. We should adopt the approach used by the *Bruch* Court and, without shifting the burden of proof, instruct the district courts to take into account the existence of a conflict of interest when determining whether an administrator's decision to deny benefits was arbitrary and capricious.

We urge our court to review en banc this troublesome heightened standard and consider adopting a more workable standard to apply in factual determination cases.[5] This case illustrates the flaws in our standard. The district court found no evidence of any influence of conflict, but Doyle argues—correctly we think—that the court has relieved Liberty Life of the burden it bears under our heightened standard. We have trouble imagining what evidence Liberty Life could offer to satisfy that standard.

---

[5]    We write only on the case before us, a factual determination case, and, without the benefit of briefing and oral argument, express no opinion on the propriety of applying our heightened standard in plan interpretation cases.

## VI. CONCLUSION

Because the district court erred in granting summary judgment in favor of Liberty Life, we reverse the grant of summary judgement and remand the case to the district court for further proceedings consistent with this opinion.[6]

REVERSED AND REMANDED.

---

[6] Liberty Life's motion for summary judgment, and Doyle's response, presented no procedural issues. And, the case for both parties was bottomed on the administrative record. It seems preferable in a case like this for the district court to determine by conference or stipulation whether either party desires to present evidence beyond the administrative record, and if not, take the case under submission and enter findings of fact and conclusions of law. Rule 56 practice seems to be an extra and unnecessary step—and one that can result in two appeals rather than one.