[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-10348

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 18, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00133 CV-3-RV-EMT

ROBIN DOYLE,

Plaintiff-Appellant,

versus

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

ON PETITION FOR REHEARING

**(September 18, 2008)**

Before BIRCH, BARKETT and COX, Circuit Judges.

COX, Circuit Judge:

Before the court is Liberty Life Assurance Company of Boston's petition for

rehearing en banc of our opinion in *Doyle v. Liberty Life Assurance Co. of Boston*,

511 F.3d 1336 (11th Cir. 2008). About the time Liberty Life filed this petition, the Supreme Court of the United States granted certiorari in a case from the United States Court of Appeals for the Sixth Circuit involving an issue we admonished our court, in our previous opinion, to consider en banc. *See Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660 (6th Cir. 2006), *cert. granted* 128 S. Ct. 1117 (Jan. 18, 2008). We postponed ruling on the petition pending the Supreme Court's decision. On June 19, 2008, the Court issued its decision in *Metro. Life Ins. Co. v. Glenn*, __ U.S. __, 128 S. Ct. 2343 (2008).

We construe Liberty Life's petition for rehearing en banc to include a petition for panel rehearing, *see* 11th Cir. R. 35-5, and grant the petition for panel rehearing. We withdraw our previous opinion and substitute the following opinion in its place:

The issue in this case is whether the district court correctly decided that the administrator of an ERISA-governed long-term disability plan did not abuse its discretion in refusing to award disability benefits to a plan participant. We affirm the district court's grant of summary judgment in favor of the administrator because the court applied a proper standard of review and because the administrator did not abuse its discretion in denying benefits to the plan participant.

2

I. Background

The Plaintiff, Robin Doyle, began working for ChoicePoint Services on February 24, 2003, as a Registered Nurse/Clinical Information Line Specialist. ChoicePoint sponsored for its eligible employees a long-term disability ("LTD") benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. The Defendant, Liberty Life Assurance Company of Boston, insured the plan pursuant to a group policy, and administered the plan.

On January 30, 2004, Doyle filed a claim with ChoicePoint for disability benefits under the plan, claiming that an anal fissure, enlarged internal hemorrhoids, and external anal skin tags prevented her from working. On February 10, 2004, she underwent a fissurotomy and sphincterotomy in an attempt to alleviate these problems. Liberty Life granted Doyle short-term disability ("STD") benefits through the maximum date available, May 9, 2004.

While Doyle was receiving STD benefits, Liberty Life obtained her medical records to determine whether she would qualify for LTD benefits, for which she had applied, after her STD benefits expired. After receiving medical records from six of Doyle's treating physicians, Liberty Life retained an independent physician to review her records. Liberty Life notified Doyle that she would not receive LTD benefits because she was still able to perform the duties of her "Own Occupation." Doyle

would qualify for LTD benefits for the initial 24 months only if she were unable to perform the duties of her "Own Occupation." Thereafter, she would qualify for LTD benefits only if unable to perform the duties of "Any Occupation." Specifically, the policy provided:

> For persons other than pilots, co-pilots, and crewmembers of an aircraft:
> a.    if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
> b.    thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

(R.2-12 at 6.)

After Liberty Life denied her claim for LTD benefits, Doyle visited a rheumatologist who diagnosed her with fibromyalgia. In light of this new diagnosis, Doyle appealed the denial of her claim. Liberty Life reviewed her additional medical records and received further peer review from a specialist in internal medicine. Liberty Life upheld its decision denying Doyle benefits, stating that she could still perform the duties of her "Own Occupation," and so did not qualify for LTD benefits under the policy.

4

Invoking ERISA jurisdiction, 29 U.S.C. §§ 1132(a)(1)(B), (e)(1), Doyle filed this action against Liberty Life seeking judicial review of its decision. Liberty Life filed a motion for summary judgment, which the district court granted. Doyle appeals.

## II. Pre-*Glenn* ERISA Framework and the District Court Proceeding

ERISA does not set out standards under which district courts must review an administrator's decision to deny benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948, 953 (1989). In order to fill this void, the Supreme Court held in *Firestone* that district courts should review de novo benefit decisions made by an administrator who is without discretion to determine eligibility or construe the terms of an ERISA-governed plan. *Id.* at 115, 109 S. Ct. at 956. On the other hand, the Court said that where the administrator exercises discretion, deferential (i.e., arbitrary and capricious[1]) review is appropriate according to trust principles, which guide review of decisions affecting ERISA-governed plans. *Id.* at 111, 109 S. Ct. at 954. Finally, the Court observed that when an administrator with discretion operates under a conflict of interest, "that conflict must be weighed as a

---

[1] Cases in our circuit equate the arbitrary and capricious standard with the abuse of discretion standard. *See Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989). We use the terms interchangeably.

'facto[r] in determining whether there is an abuse of discretion.'" *Id.* at 115, 109 S. Ct. at 957 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)).

Following *Firestone*, we undertook the "task [of] develop[ing] a coherent method for integrating factors such as self-interest into the legal standard for reviewing benefits determinations." *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1561 (11th Cir. 1990). In *Brown*, we reasoned that trust principles mandated that some deferential level of review applies to benefits decisions, *id.* at 1568, but refused to apply "highly deferential" review when the administrator operated under a conflict of interest, *id.* at 1562. We settled on what came to be known as the "heightened arbitrary and capricious standard" (hereinafter the "heightened standard"), the hallmark of which is its burden-shifting requirement. Under this standard, "the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest." *Id.* at 1566. We said that an administrator's plan interpretation that "advances the conflicting interest of the fiduciary at the expense of the affected beneficiary" was arbitrary and capricious, unless the administrator "justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Id.* at 1567.

Our more recent cases condense the holdings of *Firestone* and *Brown* into a six step analysis to guide district courts in reviewing an administrator's benefits decision:

6

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004) (summarizing analysis set forth in *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993-95 (11th Cir. 2001)) (footnotes omitted).

The district court began its discussion in this case by noting that ChoicePoint's plan vested Liberty Life with discretion in making claims decisions (step 2). The court next found that genuine issues of material fact precluded a determination of whether Liberty Life's decision was right or wrong; so, for purposes of summary judgment, the court assumed that Liberty Life's decision was wrong (step 1). Next, the court recited the measures taken by Liberty Life in reviewing Doyle's claim for

benefits and concluded that Liberty Life's denial of her claim was reasonable (step 3).

Finally, the court found that Liberty Life operated under a conflict of interest since it was responsible for both determining eligibility and paying benefits under the plan (step 4). But, instead of applying the heightened arbitrary and capricious standard, as required under step 6, it applied a "modified" heightened arbitrary and capricious standard. The court "modified" the heightened standard in the following way: instead of requiring Liberty Life to prove that its decision was not influenced by the conflict—as the heightened standard requires—the court reviewed the record and concluded that "there does not appear to be any evidence that Liberty in any way manipulated or improperly influenced Doyle's LTD benefits process in order to achieve a financially beneficial result." (R.2-18 at 13.) The court said that "given the lack of any indication to the contrary, . . . Liberty would have reached the same conclusion in this case even if it had not been operating under a conflict of interest." *Id.*

The court offered two justifications for not applying the heightened standard. First, the court thought that the question of whether the heightened standard applied to an administrator's *factual determinations* "remains open in this circuit," although it acknowledged that the heightened standard applies in *plan interpretation* cases. *Id.*

8

Second, the court reasoned that a modified standard was more in line with *Firestone* and principles of trust law than was our heightened standard. *Id.* at 11-12.

### III. Issues on Appeal and Standard of Review

Doyle initially raised two arguments on appeal. First, she argued that the district court erred in finding that Liberty Life's decision was reasonable. Second, she argued that the district court erred in applying a modified, rather than heightened, standard of review.

After the Supreme Court decided *Glenn*, we ordered Doyle and Liberty Life to brief the impact of *Glenn* on this petition for rehearing.[2] While Doyle now concedes that, post-*Glenn*, the heightened standard of review is inappropriate, she does argue that the district court did not place as much weight on the conflict of interest in this case as *Glenn* requires.

Liberty Life responds that the district court did not err in finding that its decision was reasonable, even if, as the court assumed, its decision was wrong. Liberty Life agrees that, post-*Glenn*, the heightened standard of review is inappropriate and that the district court's use of a modified standard was correct.

---

[2] Doyle and Liberty Life also briefed the issue of whether the petition for rehearing should be heard by the panel or by the court en banc. As discussed above, we agree with both parties that the petition for rehearing should be heard by this panel.

While Liberty Life admits that a conflict existed, it argues that *Glenn* does not compel the district court to give greater weight to the conflict than it did.

We review the district court's grant of summary judgment de novo and apply the same legal standards that governed the district court's decision. *Williams*, 373 F.3d at 1134.

IV. Discussion

A. Reasonableness Finding

Doyle argues that the district court erred in finding that Liberty Life's denial of her claim for disability benefits was reasonable. Specifically, she argues that it was unreasonable for Liberty Life not to consider her subjective claims of pain and suffering, which she argues are substantiated by her fibromylagia diagnosis.

Liberty Life considered Doyle's medical records and employed the services of two independent physicians to review those records. It concluded that she was still able to perform the duties of her "Own Occupation," and so did not satisfy the prerequisite for obtaining LTD benefits under the ChoicePoint policy. We conclude that it was not unreasonable for Liberty Life to disregard Doyle's complaints of intangible pain and suffering. Under ChoicePoint's policy, a plan beneficiary must provide proof that she is disabled in order to obtain LTD benefits. The policy defines "proof" as including "chart notes, lab findings, test results, x-rays and/or other forms

10

of *objective medical evidence* in support of a claim for benefits." (R.2-12 at 9) (emphasis added). Therefore, it was reasonable for Liberty Life to rely only on objective medical evidence supporting Doyle's claim, evidence which Liberty Life's reviewing physicians found lacking. *See, e.g.*, R.1-12 at 279 (statement of Liberty Life's reviewing physician, Dr. Silver, that Doyle's complaints "are unsubstantiated by objective clinical orthopedic findings"); R.2-12 at 104 (statement of Liberty Life's reviewing physician, Dr. Truchelut, that Doyle's "subjective reports are disproportionate to the physical, radiological, laboratory, and neurodiagnostic" records).

After reviewing the record, we find no error in the district court's determination that Liberty Life's decision was reasonable. We express no opinion on whether it was right or wrong.

## B. Standard of Review in the District Court

Doyle's initial argument was that the district court erred in applying a modified, rather than heightened, standard of review. But, in light of *Glenn*, both Doyle and Liberty Life agree that an application of the heightened standard of review would have been inappropriate. We agree that the district court did not err in refusing to apply the heightened standard.

Doyle now argues, however, that the same facts which led the *Glenn* Court to give greater weight to the existence of a conflict in that case are also present in this case. Accordingly, Doyle argues that under *Glenn*, the district court should have placed greater weight on the existence of a conflict than it did.

In *Glenn*, the administrator of Sears, Roebuck & Company's long-term disability plan, MetLife, which also served as the plan's insurer, denied LTD benefits to the plaintiff. The plan vested MetLife with discretion to determine eligibility and provided that a participant incapable of performing "the material duties of any gainful occupation for which she was reasonably qualified" was entitled to LTD benefits. __ U.S. __, 128 S. Ct. at 2347. MetLife denied benefits to the plaintiff because she was "capable of performing full time sedentary work." *Id.* The plaintiff appealed.

The district court denied relief, but the Sixth Circuit, applying a deferential standard of review, set aside MetLife's decision. It treated as a relevant factor MetLife's conflict arising from its dual role as administrator and insurer. The court considered the conflict, but relied more heavily on other factors, including questionable actions taken by MetLife, to conclude that MetLife abused its discretion in denying the plaintiff benefits.

The Supreme Court granted certiorari on two issues: whether an entity's dual role of administrator and insurer creates a conflict of interest, and if a conflict exists,

12

how to account for that conflict in judicial review of benefits decisions. With respect to the first issue, the Court, relying on principles of trust law, held that the dual role does create a conflict of interest. It explained that an entity that "determines whether an employee is eligible for benefits and pays benefits out of its own pocket," such as an employer or insurance company, operates under a conflict of interest. __ U.S. at __, 128 S. Ct. at 2346.

The Court then turned to the question of how a conflict, once identified, affects judicial review of an administrator's decision. The Court held that "a conflict should be weighed as a factor in determining whether there is an abuse of discretion." *Id.* at __, 128 S. Ct. at 2350 (quoting *Firestone*, 489 U.S. at 115, 109 S. Ct. at 957) (internal quotation marks omitted). The Court emphasized that "the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id.* at __, 128 S. Ct. at 2351. The Court approved the Sixth Circuit's treatment of the conflict as a relevant factor, and affirmed its decision because the conflict, along with other factors, showed that MetLife's decision was arbitrary. *Id.* at __, 128 S. Ct. at 2351-52.

As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's

13

benefits decision. Our prior opinion in this case identified three troubling aspects of the heightened standard, *Doyle*, 536 F.3d at 1344-46, two of which[3] the *Glenn* Court denounced as contrary to *Firestone*. First, our heightened standard conflicts with the adoption in *Firestone* of two standards under which an administrator's decision should be reviewed, de novo and abuse of discretion. The heightened standard, which essentially imposes greater than de novo review, is not required by, and more importantly is contrary to, *Firestone*'s reliance on two standards of review. *See Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 826 (10th Cir. 1996) (rejecting *Brown*'s heightened standard "as inconsistent with . . . the Supreme Court's dictum in *Firestone*."). The *Glenn* Court criticized the heightened standard for conflicted administrators, approving *Firestone's* reliance on trust law, which still applies "a deferential standard of review to the discretionary decisionmaking of a conflicted trustee . . . ." *Glenn*, __ U.S. at __, 128 S. Ct. at 2350.

The second flaw in our heightened standard is its burden-shifting feature, under which the *administrator* bears the burden of proving that its decision was not influenced by a conflict. As the Second Circuit noted, our burden-shifting standard

---

[3] The third flawed feature of our heightened review standard that our prior decision identified was the remarkably difficult burden it imposes upon the administrator to prove that its decision was not tainted by a conflict. This flaw was a natural consequence of the burden-shifting feature, which the *Glenn* Court disapproves.

14

is "contrary to the traditional burden of proof in a civil case." *Whitney v. Empire Blue Cross & Blue Shield*, 106 F.3d 475, 477 (2d Cir. 1997) (quoting *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996)) (internal quotation marks omitted). The traditional burden of proof requires the plaintiff to prove that the decision was tainted by self-interest, whereas our standard requires the defendant to prove that its decision was not tainted. The *Glenn* Court thought that shifting the burden of proof is unnecessary to adequately account for the conflict: "Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly on the evaluator/payor conflict." __ U.S. at __, 128 S. Ct. at 2351.

We continue to adhere to *Firestone*'s mandate that reviewing courts must consider an administrator's conflict of interest in deciding whether the decision to deny benefits was arbitrary. But we hold that *Glenn* implicitly overrules our precedent to the extent it requires district courts to review benefit determinations by a conflicted administrator under the heightened standard. We hold that the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious. And we hold that, while the reviewing court must take into account an administrative conflict when determining whether an administrator's decision was

15

arbitrary and capricious, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest.

We now consider whether the district court, in light of *Glenn*, applied the correct standard of review, and if so, whether it properly granted summary judgment in favor of Liberty Life. The district court, following the *Williams* steps, found that Liberty Life was vested with discretion, that its decision was reasonable, and that it operated under a conflict of interest. Thus, at this point the court had concluded that Liberty Life did not abuse its discretion in denying benefits. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008) ("When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." (quoting *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir.1989)) (internal quotation marks omitted)). The only remaining step in the *Williams* analysis was to determine whether Liberty Life's conflict of interest tainted its decision, thereby rendering its otherwise reasonable decision unreasonable. The district court considered the conflict and concluded that Liberty Life was not

16

influenced by it. We conclude that the court's treatment of a conflict of interest is consistent with *Firestone* and *Glenn*, and that it did not err in granting summary judgment to Liberty Life.

In its summary judgment brief, Liberty Life argued that two aspects of its benefits determination process proved that it was not influenced by the conflict. First, Liberty Life argued that its approval of STD benefits "demonstrates that Liberty Life's decision making processes were not biased." (R.1-11 at 16 n.1.)  Second, Liberty Life argued that its decision to employ an independent physician to review Doyle's benefits-denial appeal "demonstrate[s] that its decision-making process was free from bias."  (R.1-11 at 19 n.2.)

In her opposition to Liberty Life's motion for summary judgment, Doyle offered alternative explanations for Liberty Life's actions.  Doyle argued that Liberty Life's approval of 90 days of STD benefits—which it characterized as "charitable"—could be viewed as an arbitrary decision to terminate benefits on the 91st day "without any explanation as to how Ms. Doyle's condition had changed on the 90th day." (R.2-14 at 9.)  Further, Doyle explained that Liberty Life's retention of an independent physician to review her benefits-denial appeal did not demonstrate its lack of bias because Liberty Life was required by federal regulations to "obtain a

17

report from an unrelated physician consultant as part of [her] appeal under 29 C.F.R.

§ 2560.503-1(h)(3)(iii) & (v) and 29 C.F.R. § 2560.503-1(h)(4)."[4]  (R.2-14 at 9.)

Doyle's explanations for Liberty Life's actions do not create an issue of fact

as to whether Liberty Life was influenced by the conflict. The regulations cited by

Doyle require Liberty Life to employ an independent physician on appeal following

an adverse benefits determination; Liberty Life did so. But, Liberty Life went beyond

---

[4]     29 C.F.R. § 2560.503-1(h) provides:
        Appeal of adverse benefit determinations.
* * *

(3) Group health plans. The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures–
        * * *
        (iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;
        * * *
        (v) Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual. . . .
        * * *
(4) Plans providing disability benefits. The claims procedures of a plan providing disability benefits will not, with respect to claims for such benefits, be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures comply with the requirements of paragraphs (h)(2)(ii) through (iv) and (h)(3)(i) through (v) of this section.

18

what the regulations require by employing an independent physician to review Doyle's medical records during its initial determination of her entitlement to benefits. Moreover, the fact that Liberty Life terminated Doyle's benefits on the 91st day does not show Liberty Life's decision was arbitrary. The plan permits Liberty Life to terminate benefits unless the plan participant proves that she satisfies the LTD definition. Liberty Life had no obligation to explain, as Doyle maintains, "how Ms. Doyle's condition had changed on the 90th day." (R.2-14 at 9.) The burden fell on Doyle to establish that she was entitled to LTD benefits. Finally, Liberty Life took it upon itself to obtain Doyle's updated medical records, even though it was Doyle's responsibility to provide medical evidence substantiating her claim.

Doyle argues that, post-*Glenn*, a court must give greater weight to the existence of a conflict if there is no evidence that the administrator put in place procedures to assure accurate claims assessment. Doyle argues *Glenn* places the burden on a conflicted administrator to offer evidence of its efforts to assure accurate claims assessment. If an administrator does not, reasons Doyle, then the absence of any procedures becomes a factor counseling a reviewing court to find its decision unreasonable. We agree with Liberty Life that this is precisely the kind of burden-shifting rule which *Glenn* rejects. The *Glenn* Court held that the presence of a conflict of interest might be of little significance if the administrator can show what

19

steps it has taken to promote accurate claim assessment, but if the record is silent on this point, it is proper to focus on other factors. __ U.S. at __, 128 S.Ct. at 2351-2.

Doyle argues next that, under *Glenn*, a court should give greater weight to the existence of a conflict when there is evidence of procedural unreasonableness. Here, Doyle argues that Liberty Life demonstrated procedural unreasonableness in awarding Doyle STD benefits, which required Doyle to show she was unable to perform the duties of her "Own Occupation" while denying her LTD benefits, which required the exact same showing. Liberty Life responds that it did not complete its evaluation of Doyle's ability to perform the duties of her "Own Occupation" until after she had received her STD benefits. In this case, once all relevant medical records were received and the investigation complete, Liberty Life determined that Doyle was able to perform the duties of her "Own Occupation." Liberty Life contends that the award of STD benefits before the investigation was complete is not evidence of procedural unfairness but rather of Liberty Life's willingness to overcompensate claimants while investigations are pending. We agree with Liberty Life that its actions here do not compel a district court to give greater weight to the presence of a conflict than the district court did.

Finally, Doyle contends that, post-*Glenn*, a district court should place greater weight on the existence of a conflict when the administrator emphasizes medical

20

records favoring a denial of benefits. Doyle argues that Liberty Life placed greater emphasis on medical reports suggesting Doyle could perform the duties of her "Own Occupation" than those which suggested she could not. Accordingly, argues Doyle, the district court erred in not placing greater weight on the existence of the conflict. Liberty Life responds that the medical reports suggesting Doyle was unable to perform the duties of her "Own Occupation" were not based on objective medical evidence. Liberty Life placed greater emphasis on the medical reports based on objective medical evidence, which, coincidentally, also suggested Doyle could perform the duties of her "Own Occupation." We do not believe, as discussed above, that Liberty Life's preference for medical opinions grounded on objective medical evidence is somehow indicative that its decision was unreasonable or that the presence of a conflict should be given greater weight than the district court gave it.

There is no evidence showing that Liberty Life was influenced by the conflict. Furthermore, there is no evidence which should have prompted the district court to accord more weight to the conflict. *Glenn's* holding that a conflict must be taken into account during review of benefit denials applies in all cases where a conflict is present, regardless of whether the administrator was influenced by the conflict. In other words, the existence of a conflict of interest alone is sufficient to trigger the obligation to weigh it on judicial review. *See Glenn*, __ U.S. at __, 128 S. Ct. at 2352-

21

53 (Roberts, C.J., concurring in part and concurring in the judgment) ("The majority's approach would allow the bare existence of a conflict to enhance the significance of other factors already considered by reviewing courts, even if the conflict is not shown to have played any role in the denial of benefits."); *id.* at __, 128 S. Ct. at 2357 (Scalia, J., dissenting) (criticizing the majority opinion as inconsistent with the principle of trust law that "a fiduciary with a conflict does not abuse its discretion unless the conflict *actually* and *improperly motivates* the decision"). There is no evidence in the record suggesting "a higher likelihood that [the conflict] affected [Liberty Life's] benefits decision," such as "a history of biased claims administration." *Id.* at __, 128 S. Ct. at 2351 (majority opinion). Consequently, the conflict should have had little weight in the district court's analysis.

The evidence shows that Doyle had substantial medical problems. Some of the experts opined that she could not perform the material duties of her "Own Occupation." Other experts opined that objective medical evidence did not substantiate her claims and that she could perform the material duties of her "Own Occupation." Liberty Life is vested with discretion to determine eligibility under ChoicePoint's plan; thus we owe deference to its determination. *Glenn*, __ U.S. at __, 128 S. Ct. at 2350 ("Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee . . . ."). Because the evidence

is close, we cannot say, even accounting for the conflict, that Liberty Life abused its discretion in denying Doyle benefits.

<h2 style="text-align:center">V. Conclusion</h2>

Liberty Life did not abuse its discretion in denying Doyle's claim for LTD benefits. We therefore affirm the district court's judgment in favor of Liberty Life.[5]

AFFIRMED.

---

[5] Liberty Life's motion for summary judgment, and Doyle's response, presented no procedural issues. And, the case for both parties was bottomed on the administrative record. It seems preferable in a case like this for the district court to determine by conference or stipulation whether either party desires to present evidence beyond the administrative record, and if not, take the case under submission and enter findings of fact and conclusions of law. Rule 56 practice seems to be an extra and unnecessary step—and one that can result in two appeals rather than one.